In re Erika M. KURTAJ, Debtor.

Barbara Katz, Trustee, Plaintiff,

v.

Erika M. Kurtaj, Defendant.

Fidelity National Title Insurance Company of New York, Plaintiff,

v.

Erika M. Kurtaj, Defendant.

Bankruptcy No. 01–51261.
Adversary Nos. 01–05065, 01–05071.

United States Bankruptcy Court, D. Connecticut.

Sept. 30, 2002.

Eric M. Gross, Green and Gross, P.C., Bridgeport, CT, for plaintiffs.

Douglas J. Lewis, Bethel, CT, for defendant Kurtaj.

## MEMORANDUM OF DECISION ON § 727 COMPLAINTS

ALAN H. W. SHIFF, Chief Judge.

■ The defendant-debtor, Erika Kurtaj, filed this chapter 7 petition on October 11, 2000. On March 12 and 21, 2001, the plaintiffs, chapter 7 trustee Barbara H. Katz and Fidelity National Title Insurance Company of New York, commenced adversary proceedings 01–5065 and 01–5071, respectively, to deny Kurtaj a discharge under 11 U.S.C. § 727.[1] For the following reasons, the debtor's discharge is denied.

*False Statement Under Oath— § 727(a)(4)*

■ Code § 727(a)(4)(A) provides that "the court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." To deny the debtor's discharge under this subsection, a plaintiff must prove that the defendant made a statement under oath, which he knew to be false, with the intent to defraud creditors or the trustee, and which related materially to the bankruptcy case. *Chemical Bank v. Hecht (In re Hecht)*, 237 B.R. 7, 9 (Bankr.D.Conn.1999). Statements under oath include statements in documents, such as the bankruptcy schedules and statement of financial affairs, filed with the petition and statements

---

1. Discharge is denied under § 727 if any of its subsections are proven by a preponderance of the evidence. *See, e.g., McGrath v. Moreau (In re Moreau)*, 161 B.R. 742, 745 (Bankr. D.Conn.1993); *Martin v. Key Bank of New York (In re Martin)*, 208 B.R. 799, 804 (N.D.N.Y.1997).

by the debtor during examinations under oath, such as testimony during the meeting of creditors held pursuant to § 341(a). *See Montey Corp. v. Maletta (In re Maletta),* 159 B.R. 108, 114 (Bankr.D.Conn.1993) (cited in *Casa Investments Co. v. Brenes (In re Brenes),* 261 B.R. 322, 334 (Bankr. D.Conn.2001)).

As this court noted in *In re Maletta:*

a debtor has ... affirmative [duties] to identify all assets [and] liabilities and to answer all questions fully and with the utmost candor. Creditors and those charged with the administration of the bankruptcy estate are entitled to a truthful statement of the debtor's financial condition. Such complete disclosure is essential to the proper administration of the bankruptcy case and is a prerequisite to the debtor's ability to obtain a discharge.

A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth. Where persuasive evidence of a false statement under oath has been produced by a plaintiff, the burden shifts to the defendant to prove that it was not intentionally false, and fraudulent intent may be inferred, if the false statement is not explained. A debtor's disclosure of information previously omitted from schedules is some evidence of innocent intent, but this inference is slight where the debtor has amended his schedules after the trustee or creditors have already discovered what the debtor sought to hide. Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel. Furthermore, a debtor cannot, merely by play-

ing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

*In re Maletta,* 159 B.R. at 112.

■ Since a plaintiff can rarely produce direct evidence of fraudulent intent, the requisite actual intent to defraud may be established through proof of sufficient badges of fraud, including inadequate consideration and close friendship or relation to a transferee. *Id.* Likewise, "a court may infer fraudulent intent under Code § 727(a)(4)(A) from a debtor's reckless indifference to or cavalier disregard of the truth." *Id.*

A statement is material if it is pertinent to the discovery of assets ... Furthermore, 'even if each falsehood or omission considered separately may be too immaterial to warrant a denial of a discharge pursuant to § 727(a)(4)(A) ... [a] multitude of discrepancies, falsehoods and omissions taken collectively ... [may be of] sufficient materiality to bar the Debtor's discharge.' *In re Sapru,* 127 B.R. 306, 315–316 (Bankr.E.D.N.Y.1991).

*Id.*

■ The evidence adduced at trial established Kurtaj's reckless indifference for the truth of the papers she filed with her petition. For example, her schedules omitted any reference to her checking accounts, *see* Exh. A, Schedule B, which were later disclosed at her January 26, 2001 Rule 2004 F.R.Bankr.P examination. *See* transcript at 22, Exh. F at 20, 32–37, and 53. The bank's records, however, disclosed more than $1,240.05 in that account on that date. *See* transcript at 68, Exh. F at 53–54, and Exh. E at 3. Kurtaj did not dispute the accuracy of those records. Moreover, Kurtaj's schedules failed to disclose her prepetition transfer of $20,000 to her son. *See* Exh. A, Schedule F at 2, 4, 7

and Statement of Financial Affairs at ¶¶ 3, 10. Subsequently, Kurtaj offered inconsistent sworn testimony to explain that transfer. According to the undisputed trial testimony of Trustee Katz, Kurtaj testified at the November 15, 2000 section 341 hearing that the transfer was a gift, intended to be used for improvements on her son's residence, who "then gave it back to her over time to buy materials to fix up the house." Transcript at 79. Trustee Katz also testified that on two subsequent examinations, to wit: the January 26, 2001 Rule 2004 examination and her January 10, 2002 deposition, Kurtaj stated that she had given the $20,000 to her son for safekeeping to prevent her husband from getting it. *Id.*

Although, as noted, *see supra* at n. 1, proof of any of the subsections of § 727(a) is a basis for the denial of a discharge, it is noted that the transfer of $20,000 to her son also implicated § 727(a)(2)(A).[2]

*Failure to Keep Records— § 727(a)(3)*

■■ Under 11 U.S.C. § 727(a)(3),[3] a debtor is obligated to keep and fully disclose his or her financial affairs. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2nd Cir.1996) ("the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs."). The policy served by that obligation is to give unsecured and undersecured creditors the ability to trace a debtor's financial history to determine whether they are being treated fairly. *See Frehm v. Harron (In re Harron)*, 31 B.R. 466, 468–69 (Bankr. D.Conn.1983):

> Since creditors must be able to test the accuracy of the statements and schedules contained in a debtor's petition, it follows that debtors must keep and preserve recorded information, including books, documents, records and papers from which the debtor's financial condition or business transactions may be ascertained ... The trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands during the period prior to his bankruptcy.

*Id.*

Kurtaj's explanation for her failure to keep financial records was that it was her routine practice to destroy them. If that justification were sufficient to avoid the consequence of a denial of discharge, the exception would become the rule.

Accordingly, Kurtaj's discharge is DENIED, and IT IS SO ORDERED.

---

**2.** That section provides that:
> The court shall grant the debtor a discharge, unless ... the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred ... or concealed ... property of the debtor, within one year before the date of the filing of the petition ...

11 U.S.C. § 727(a)(2)(A). *See also In re Freitas*, 261 B.R. 556, 561 (Bankr.D.Conn.2001). It is unnecessary to address the plaintiffs' § 727(a)(5) argument.

**3.** Section 727(a)(3) provides that
> the court shall grant the debtor a discharge, unless ... the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case ...